# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEREMY D. SOUTH | : |
| Plaintiff, | : Civ. No. 17-13387 (FLW) (LHG) |
| v. | : |
| | : **OPINION** |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, et al. | : |
| Defendants. | : |

**FREDA L. WOLFSON, U.S.D.J.**

## I. INTRODUCTION

Plaintiff, Jeremy D. South ("plaintiff" or "South"), a prisoner currently incarcerated at South Woods State Prison, seeks to bring this civil action *in forma pauperis* ("IFP"), without prepayment of fees or security, asserting claims pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act. The Court previously denied his IFP application without prejudice. Plaintiff resubmitted his IFP application, and the Court will now grant his application to proceed *in forma pauperis*.

At this time, the Court must also review the complaint under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. For the following reasons, the Court will dismiss the claims brought against Christopher S. Porrino; Gary M. Lanigan; Rajiv K. Shah, MD; Perera; Sharmalie, MD; Paul Weiser, MD; Cynthia Merkling; RNFA Cielito; Louis G. Fares, II, MD; Denise V. Rogers; and Elizabeth Topol, in their official capacities with prejudice and claims

1

brought in their individual capacities without prejudice. South's claims against the New Jersey Department of Corrections are dismissed with prejudice. And, his claims against UMDNJ and UCHC are dismissed without prejudice. Finally, the Court will deny without prejudice plaintiff's motion for the appointment of pro bono counsel.

## II. BACKGROUND

The factual allegations of the complaint will be construed as true for the purposes of this opinion. The complaint appears to allege claims of inadequate medical treatment in violation of the United States and New Jersey Constitutions. It names as defendants the New Jersey Department of Corrections; Christopher S. Porrino, as Attorney General for the State of New Jersey; Commissioner Gary M. Lanigan; St. Francis Medical Center; Rajiv K. Shah, MD; Perera; Sharmalie, MD; Paul Weiser, MD; Cynthia Merkling; RNFA Cielito; Louis G. Fares, II, MD; UMDNJ; Denise V. Rogers; University Correctional Health Center ("UCHC"); Elizabeth Topol; and John and Jane Does I-II. (Compl., ECF No. 1.)

South alleges that he suffers from a clinical history of "stomach problems" such as nausea, vomiting, and dehydration. (*Id.* ¶¶ 10-11.) It appears that the East Jersey State Prison physician, Dr. Winetsky, conducted a number of tests on South that were inconclusive as to the cause of these issues. (*Id.* ¶ 12.) South claims that after he filed a series of Inmate Remedy System Forms, Dr. Winetsky ordered additional medical testing. (*Id.* ¶¶ 13-15.) South additionally claims he wrote to Topol, UCHC, and UMDNJ regarding his medical complaints. (*Id.* ¶ 16.)

On February 19, 2016, South underwent a CAT Scan at St. Francis Medical Center that revealed two possible proximal malrotations, described by South as "twisted bowels." (*Id.* ¶¶ 18-19.) Following that CAT scan, South again consulted with Dr. Winetsky and Dr. Rajiv Shah

2

of St. Francis Medical Center. (*Id.* ¶ 20.) Dr. Shah recommended South undergo another CAT scan in six months. (*Id.* ¶ 21.)

On August 9, 2016, South underwent a second CAT scan, which was performed by defendants Perera and Sharmalie. (*Id.* ¶ 23.) Based on the results of that CAT scan, it appears that Dr. Shah and Dr. Winetsky recommended that South undergo surgery for a possible proximal malrotation. (*Id.*)

On October 19, 2016, South was transferred to St. Francis Medical Center for an exploratory laparotomy. (*Id.* ¶ 27.) At that time, Dr. Shah allegedly informed South, for the first time, that his "pancreas may need to be removed due to migration and displacement within the body cavity." (*Id.*) Prior to his surgery on October 20, 2016, South signed a consent form that he insists did not include consent for hernia surgery. (*Id.* ¶ 28.) After surgery was completed, Dr. Shah told South that the surgery was "uneventful" and explained that during the surgery he moved the bowels, "possibly fix[ing] the problem." (*Id.* ¶¶ 34-38.)

South was transported back to East Jersey State Prison on October 25, 2016, but he alleges that he had not yet recovered from surgery and should not have been discharged. (*Id.* ¶ 39.) Shortly thereafter, South was seen by Dr. Winetsky who told him that the surgery was "uneventful" and that despite the surgery, he would probably still get sick. (*Id.* ¶ 40.)

In early November 2016, South alleges he had multiple video teleconferences regarding his condition with representatives from St. Francis Medical Center, UMDNJ, UCHC, and the Department of Corrections. (*Id.* ¶¶ 43-46.) During a video teleconference with Dr. Shah, St. Francis Medical Center, and the Department of Corrections, South reported a bulge on the lateral side of his abdomen that had been presenting intermittently. (*Id.* ¶ 46.) Dr. Shah allegedly told him the bulge could be a hernia. (*Id.* ¶ 47.)

3

On November 22, 2016, South was seen by Dr. Winetsky, who confirmed the hernia diagnosis and ordered South to wear an abdominal binder. (*Id.* ¶ 54.) On November 28, 2016, South received the abdominal binder and reported to "UMDNJ and/or UCHC of the pain I was experiencing due to the untreated hernia and following bowel surgery." (*Id.* ¶ 55.) On December 1, 2016, South signed consent forms for a "gastroenterology and colonoscopy." (*Id.* ¶ 56.) The complaint does not indicate that South received any additional treatment until June 17, 2017, when he reported to Mildred Johnson, RN "of the pain and suffering [he] was experiencing as a result of Defendants' failure to treat." (*Id.* ¶ 57.)

South seeks against each defendant $10,000 in compensatory damages and $50,000 in punitive damages. (*Id.* ¶¶ 72-73.) South further seeks injunctive relief in the form of an Order directed at the Department of Corrections, UMDNJ, or UCHC to order an endoscopic exam and hernia surgery at J.F.K. Memorial Hospital, Cooper Medical Center, or Robert Wood Johnson; and barring further treatment of South at St. Francis Medical Center. (*Id.* ¶¶ 67-70.) South additionally seeks an injunction against the Department of Corrections barring it from transporting him in a 'kennel-style' bifurcated-van." (*Id.* ¶ 71.)

### III. LEGAL STANDARD

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner (1) is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), or (2) seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A. The PLRA directs district courts to sua sponte dismiss claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

4

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the Court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017) (per curiam). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV. DISCUSSION

South brings his complaint pursuant to 42 U.S.C. § 1983. A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. That section provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of

5

> Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to bringing claims under § 1983 against all defendants, South additionally asserts claims against all defendants for violations of the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-2, *et seq*. The NJCRA claims will be discussed in tandem with the § 1983 claims as it is well accepted that the New Jersey Civil Rights Act is analogous to § 1983. *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011).[1]

### A. Eleventh Amendment Immunity / Persons Under § 1983

South's claims under § 1983 and the NJCRA against the New Jersey Department of Corrections and Christopher S. Porrino, former Attorney General for the State of New Jersey;

---

[1] South divides his claims against defendants into six counts: (1) against Individual Corrections Officers for violations of § 1983, (2) against New Jersey Department of Corrections for violations of § 1983, (3) against St. Francis Medical Center and Dr. Shah for violations of § 1983, (4) against UMDNJ and Denise Rogers for violations of § 1983, (5) against UCHC and Elizabeth Topol for violations of § 1983, and (6) against all defendants for violations of the NJCRA. Despite enumerating these counts, he does not set forth what claims he was bringing against the other defendants. However, the Court construes the complaint to assert both § 1983 and NJCRA claims against all named defendants.

and Gary M. Lanigan, former Commissioner and Chief Executive Officer of the New Jersey Department of Corrections, in their official capacities (collectively the "State Defendants") for monetary relief must be dismissed as these defendants are immune from suit under the Eleventh Amendment of the United States Constitution.

All claims for monetary relief against the State Defendants in their official capacities must be dismissed because they are not "persons" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Furthermore, the Eleventh Amendment to the United States constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Generally, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity has been waived by the state itself or by federal statute. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

As an agency of the Executive Branch of the State of New Jersey, the Department of Corrections and its Commissioner "are part of the state for purposes of the [E]leventh [A]mendment." *Grabow v. So. State Corr. Facility*, 726 F. Supp. 537, 537-38 (D.N.J. 1989) (finding that Department of Corrections and its Commissioner "are not 'persons' within the meaning of § 1983"). Similarly, plaintiff's claim against Porrino, the former-Attorney General for the State of New Jersey, is dismissed without prejudice because where a plaintiff sues a state official in his or her official capacity "it is not a suit against the official but rather is a suit against the official's office" and thus it is not cognizable under § 1983. *Will*, 491 U.S. at 71.

Moreover, to the extent plaintiff seeks injunctive relief against the Department of

7

Corrections, those claims must also be dismissed with prejudice. "Plaintiffs may bring suits for prospective injunctive relief pursuant to federal law against state officers in their official capacities, but not the state itself or state agencies." *Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d 587, 602 (D.N.J. 2010); *see also C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir. 2000) (holding that a state agency "is immune from suit in a federal court without regard to the nature of the relief sought").

In addition to the claims brought against the State Defendants in their official capacities, South brings claims against the remaining defendants in their official capacities. These claims will also be dismissed with prejudice. First, if defendants are state actors—all claims against them in their official capacities would be barred by the Eleventh Amendment. *See Jones v. Hashagen*, 512 F. App'x 179, 183 (3d Cir. 2013). And, if those defendants are not state actors, they cannot be subject to liability under § 1983. *Id.* Because South cannot proceed with official capacity claims against these defendants under either scenario, the official capacity claims against all defendants are dismissed with prejudice.

### B. Deliberate Indifference to Medical Needs

It appears from the complaint that South seeks to hold certain employees of St. Francis Medical Center, namely Perera, Sharmalie, MD, RNFA Cielito, Paul Wieser, MD, Cynthia Merkling, Louis G. Fares, III, and Dr. Rajiv Shah liable under § 1983 and the NJCRA for deliberate indifference to his medical needs in violation of the Eighth Amendment of the United States Constitution.

To state a claim for inadequate medical treatment under the Eighth Amendment, an inmate must allege that the defendant was "deliberately indifferent" to the inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[A] medical need is 'serious'

8

for the purposes of a denial of medical care claim if it is either 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Mattern v. City of Sea Isle*, 657 F. App'x 134, 139 (3d Cir. 2016) (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). An official acts with deliberate indifference where "he or she 'knows of and disregards an excessive risk to [a complainant's] health or safety.'" *Id.* at 140 (alteration in original) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003)). The Third Circuit has identified a variety of circumstances that amount to deliberate indifference, such as: "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2017) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)); *see also Natale*, 318 F.3d at 582. A mere "inadvertent failure to provide adequate medical care"—*i.e.*, negligent diagnosis or treatment—will not create an Eighth Amendment claim. *Estelle*, 429 U.S. at 105–06; *Parkell*, 833 F.3d at 337.

From the outset, South's claims against Merkling and Weiser must be dismissed because he has failed to make any factual allegations against them to demonstrate they were personally involved in any alleged constitutional violation. *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) ("A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable.'" (quoting *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003)).

The Court infers that South's claim for deliberate indifference is based on the alleged failure of defendants to promptly diagnose and treat his "stomach problems." Assuming the stomach problems suffered by South were a serious medical need, South fails to state a claim for

deliberate indifference because the complaint states that the defendants did, in fact, provide significant medical care to South. There are no allegations in the complaint that show that defendants refused to treat Plaintiff, prevented him from receiving the care required or delayed treatment in such a way that exacerbated his medical condition. Indeed, the allegations against each medical provider demonstrate the efforts that were taken to treat South.

As to Perera and Sharmalie, the complaint asserts that they performed a CAT scan on South in August 2016. There are no further allegations which would show that Perera and Sharmalie is any way disregarded any risk to plaintiff's health or safety.

Similarly, based on the allegations against Cielito, the Court has no basis to infer that she disregarded any known risk to Plaintiff's health or safety. Indeed, the only allegation in the complaint against Cielito is that South did not give her consent to perform a hernia surgery before South underwent the exploratory laparotomy. The relevance of this allegation is unclear as at the time of the exploratory laparotomy, South had not been diagnosed with a hernia and there was no reason he would have been required to give consent for a hernia surgery.

South's claim against Fares also fails to state a claim as the only allegation involving Fares is that he participated in one of the teleconferences regarding plaintiff's treatment. With only this allegation, there is nothing from which the Court can infer that Fares acted with deliberate indifference to plaintiff's medical needs when it appears he was involved in determining how to treat plaintiff's ailments.

The facts as alleged in South's complaint also do not state a claim for deliberate indifference against Dr. Shah. The complaint demonstrates that Dr. Shah, working alongside several other doctors, worked to treat South's "stomach problems." He performed surgery to repair the malrotation of South's bowels and thereafter determined that South had a hernia.

While the complaint seems to take issue with the fact that hernia surgery has not yet been recommended or performed, South's disagreement with the course of medical treatment does not constitute a constitutional violation. *Lanzaro*, 834 F.2d at 346 (noting that "disagreement as to the proper medical treatment [does not] support a claim of an eighth amendment violation"). Moreover, Plaintiff's pleadings do not allege that any delay in the treatment of his hernia prompted "unnecessary and wanton infliction of pain" or that any delay caused him "to suffer a life-long handicap or permanent loss." *Lanzaro*, 834 F.2d at 347.

### C. Supervisory Liability

Finally, the Court construes the complaint as seeking to hold St. Francis Medical Center, UMDNJ, Denise Rogers, UCHC, and Elizabeth Topol, as well as Lanigan and Porrino in their individual capacities, liable as supervisors for deliberate indifference to his medical needs. These claims must be dismissed because § 1983 and the NJCRA do not provide for *respondeat superior* liability against supervisors and employers. *Iqbal*, 556 U.S. at 676; *Ingram v. Twp. Of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012) ("[B]ecause respondeat superior liability is not permitted under § 1983, and because New Jersey courts interpret the NJCRA as analogous to § 1983, the Court holds that respondeat superior liability is no permitted for claims under the New Jersey Constitution and the NJCRA."). Indeed, a supervisor defendant may only be liable for Eighth Amendment violations where the supervisor (1) established a policy, custom, or practice that caused the harm or (2) personally participated in the constitutional violation. *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-19 (3d Cir. 2017), *overturned on other grounds*, *Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Moreover, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of

11

actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).

The complaint is devoid of any factual allegations to support a claim of supervisory liability against any of the supervisor defendants. While plaintiff generally alleges that each of the supervisor defendants had the power to enact relevant policies, he fails to adequately allege what policies enacted by these defendants, if any, violated his constitutional rights or that any of the supervisor defendants personally participated in any constitutional violation.

Indeed, the Complaint contains minimal allegations against these defendants. First, as to the defendant entities—St. Francis Medical Center, UMDNJ, and UCHC—it appears that each was involved with plaintiff's medical treatment and that he was treated by employees of each entity. However, there are no allegations that any of the entities maintained a policy, custom, or practice that caused South's constitutional rights to be violated. South alleges that he wrote to Topol, UCHC, and UMDNJ in January 2016 regarding his medical complaints and that their "deliberate indifference to [his] serious medical needs resulted in repeated clinic visits and admittance to the infirmary." However, putting aside that these allegations do not relate to any policy or custom, it is apparent from the complaint itself that each of these defendants was involved in Plaintiff's treatment in what seemed to be a concerted effort by these defendants to determine what caused Plaintiff's "stomach problems." In that regard, these allegations fail to show that defendants "[knew] of and disregard[ed] an excessive risk to [his] health or safety." *Mattern*, 657 F. App'x at 139. Accordingly, the claims against St. Francis Medical Center, UMDNJ, UCHC, and Topol are dismissed without prejudice for failure to state a claim upon which relief may be granted.

Moreover, South's supervisory claims against Rogers, Lanigan, and Porrino must also be

dismissed because the complaint is devoid of any factual allegations against these defendants from which the Court may infer personal involvement in the alleged wrongdoing. *See Rode*, 845 F.2d at 1207.

## D. Motion for Pro Bono Counsel

South has additionally filed a motion for pro bono counsel, arguing that because his claims arise under the United States and New Jersey Constitutions they are "complex and require the assistance of counsel." (ECF No. 2-1, ¶ 37.) 28 U.S.C. § 1915(e) and Appendix H of the District of New Jersey Local Civil Rules permit a District Court to appoint pro bono to a *pro se* plaintiff that cannot afford counsel. Before appointment of pro bono counsel is considered, "it must first appear that the claim has some merit in fact and law." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (quoting *Maclin v. Freake*, 650 F.2d 885, 887 (7th Cir. 1981)). If the court determines there is some merit in fact and law to plaintiff's claim, it considers a number of factors including the complexity of plaintiff's case and his or her capacity to present that case, the investigation requirements of the case, and whether the case will rely substantially on credibility determinations. *See id.* at 156.

At this juncture, plaintiff's application for pro bono counsel will be denied without prejudice. His complaint, as set forth above, has not passed screening and thus there has been no showing that there is some merit in fact and law to his claims. If the complaint is permitted to proceed after amendments to the complaint, South may submit a new application for the appointment of pro bono counsel in accordance with the Local Civil Rules.

## V. CONCLUSION

For the foregoing reasons, South's complaint will be dismissed with prejudice as to claims brought against the New Jersey Department of Corrections and Porrino, Lanigan, Dr.

13

Shah, Perera, Sharmalie, Weiser, Merkling, Cielito, Fares, Rogers, and Topol in their official capacities. Claims against Porrino, Lanigan, Dr. Shah, Perera, Sharmalie, Weiser, Merkling, Cielito, Fares, Rogers, and Topol, in their individual capacities, are dismissed without prejudice for failure to state a claim upon which relief may be granted. The claims against UMDNJ and UCHC are dismissed without prejudice. It is possible, however, that South may be able to plead facts that would suffice to state a claim against the defendants who have been dismissed without prejudice. Thus, South is permitted to file an amended complaint that would adequately state a timely claim. Any such amended complaint should be filed within thirty days after the date of this opinion and accompanying order.

DATED: October 31, 2018                     /s/ Freda L. Wolfson
                                            FREDA L. WOLFSON
                                            United States District Judge